UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEVIN J. MYERS,

                         Plaintiff,

            v.

COUNTY OF SUFFOLK, et al.,

                         Defendants.
-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-CV-8311-SJB-SIL

**BULSARA, United States District Judge:**

Plaintiff Kevin J. Myers ("Myers") filed this action against the County of Suffolk, the Suffolk County District Attorney's Office, the Suffolk County Police Department ("SCPD"), Assistant District Attorney Mary Skiber, and several unnamed John Doe SCPD officers, (collectively, "Defendants"), seeking the return of his firearms seized by the SCPD and damages from their prolonged retention by the Defendants. (Compl. filed Nov. 8, 2023, Dkt. No. 1 ¶¶ 1, 5–9). The parties have filed cross-motions for summary judgment on the remaining claims in this case—Section 1983 claims for procedural due process violations. (Pl.'s Mem. in Supp. of Mot. for Summ. J. dated Mar. 6, 2025 ("Pl.'s Mot."), Dkt. No. 27; Defs.' Mem. in Opp'n to Pl.'s Mot. & in Supp. of Cross-Mot. for Summ. J. dated May 7, 2025 ("Defs.' Opp'n & Cross-Mot."), Dkt. No. 27-17). For the reasons explained below, Defendants' motion for summary judgment is granted, and Myers's motion for summary judgment is denied.

STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas.*

*Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)). "In determining whether summary judgment is appropriate, [the

Court] must resolve all ambiguities and draw all reasonable inferences against the

moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue

of material fact." *Celotex*, 477 U.S. at 323. "This is true even though the court [is]

presented with cross-motions for summary judgment; each movant has the burden of

presenting evidence to support its motion that would allow the district court, if

appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d

Cir. 1988). "When both parties have moved for summary judgment, the court must

evaluate each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration." *Alta*

*Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 149 (2d Cir. 2026) (quotation

omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support

the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the

record "including depositions, documents, electronically stored information, affidavits

or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R.

2

56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims.  *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses.  *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).  Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded."  *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL

3

1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)).  The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence.  *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).  The Court must also disregard conclusory denials that lack citations to admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain factual assertions, with citation to the record.  They should not contain conclusions*[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts

4

showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

## FACTUAL BACKGROUND

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements,[1] and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

Myers had an active New York State pistol license in 2017.  (Defs.' 56.1 Statement dated May 7, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 27-19 ¶ 1; Pl.'s Resp. to Defs.' 56.1 Stmt. dated June 6, 2025 ("Pl.'s 56.1 Resp."), Dkt. No. 27-1 ¶ 1).  That license was suspended on November 13, 2017, following a domestic incident involving Myers and his son.  (*Id.* ¶ 3; Defs.' 56.1 Stmt. ¶ 3).  As a result of the suspension, pursuant to N.Y. Penal Law § 400.00(11)(c), Myers was required to and did surrender his pistol license and nine handguns to the police on November 27, 2017.  (*Id.* ¶ 4; Pl.'s 56.1 Resp. ¶ 4).

---

[1] Both parties' Rule 56.1 Statements are difficult to follow.  Myers included his Rule 56.1 Statement as the facts section of his motion, rather than as a separate statement, so the Court cites to those motion papers.  Defendants filed their statement as a separate document, but included duplicative paragraph numbering for the additional facts they offer in support of their motion (and mislabeled several of their responsive paragraphs).  Accordingly, for clarity, the Court refers separately to Defendants' Rule 56.1 responses (cited as "Defs.' 56.1 Resp."), and their additional statements in support of their own motion (cited as "Defs.' 56.1 Stmt."), though both are contained within the same document.

On February 24, 2019, the SCPD arrested Myers, charging him with three counts of criminal possession of assault rifles and one count of criminal possession of a large capacity magazine.  (*Id.* ¶ 5; Defs.' 56.1 Stmt. ¶ 5).  Upon arrest, the SCPD seized the three assault rifles, as well as other firearms, including long guns and high-capacity magazines.  (Pls.' Mot. ¶ 1; Defs.' 56.1 Resp. dated May 7, 2025 ("Defs.' 56.1 Resp."), Dkt. No. 27-19 ¶ 1; Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Resp. ¶ 7).  Soon after the arrest, at Myers's request, the SCPD released some of the seized handguns and magazines to Stanley Rachelle ("Rachelle"), who had a Federal Firearms License.  (Pl.'s Mot. ¶ 2; Defs.' 56.1 Resp. ¶ 2).

Myers originally pleaded guilty to one class E felony, criminal possession of a firearm in the fourth degree, on December 5, 2019, in Suffolk County Superior Court. (Defs.' 56.1 Stmt. ¶ 8; Pl.'s 56.1 Resp. ¶ 8).  He was placed on interim probation and informed that upon successful completion, he would be able to withdraw his felony plea and replace it with a class A misdemeanor for weapons possession.  (*Id.*; Defs.' 56.1 Stmt. ¶ 8).

On October 26, 2020, the SCPD sent Myers a notice informing him of the revocation of his pistol license, based on his arrest and conviction.  (*Id.* ¶ 9; Pl.'s 56.1

6

Resp. ¶ 9).[2] That notice advised Myers of New York Penal Law § 400.00(11)(c), which required him to "immediately surrender any and all firearms, rifles, or shotguns" he owned or possessed. (*See* Pistol License Notice of Revocation ("Revocation Notice"), attached to Defs.' 56.1 Stmt. as Ex. J, Dkt. No. 30-9).

On December 3, 2020, Myers withdrew his original guilty plea, re-pleaded guilty to the class A misdemeanor for weapons possession, and received a sentence of three years probation. (Pl.'s Mot. ¶ 3; Defs.' 56.1 Resp. ¶ 3; Defs.' 56.1 Stmt. ¶ 11; Pl.'s 56.1 Resp. ¶ 11). He was discharged from probation on May 3, 2022. (Pl.'s Mot. ¶ 4; Defs.' 56.1 Resp. ¶ 4).[3]

There was one relevant fact that Myers initially claimed was disputed, but it is no longer. Myers's "Statement of Undisputed Facts" states that Defendants still hold— beyond the assault rifles and high-capacity magazines—an unknown number of rounds of ammunition. (*See* Pl.'s Mot. ¶ 10). Myers did not cite any record evidence for this assertion, and Defendants disputed it on that basis. (Defs.' 56.1 Resp. ¶ 8). In subsequent briefing, (Pl.'s Opp'n to Defs.' Mot. & Reply in Supp. of Summ. J. dated May

---

[2] The revocation notice contains several bases for its decision, including: Myers's arrest for weapons possession charges while his license was suspended, the felony conviction, the federal law which prohibits individuals with a felony conviction from possessing firearms, and the state law which prohibits individuals convicted of a felony or serious offense from eligibility for a pistol license. (Pistol License Notice of Revocation, attached to Defs.' 56.1 Stmt. as Ex. J, Dkt. No. 30-9). Myers disputes that federal law prohibits him from possessing a firearm. (Pl.'s 56.1 Resp. ¶ 9). That legal argument is not appropriate in a Rule 56.1 Statement, nor is it relevant to the Court's decision on these motions.

[3] Myers states that he contacted the SCPD to request the return of his seized property the same day he completed his parole, but he was denied and told there was a "District Attorney Hold." (Pl.'s Mot. ¶ 5).

23, 2025 ("Pl.'s Opp'n & Reply"), Dkt. No. 27-20 at 3, 10–11), Myers pointed to his own deposition testimony that the SCPD did not log some ammunition that was seized from him, (Dep. of Kevin J. Myers at 32:18-23, attached to Pl.'s Mot. as Ex. M, Dkt. No. 27-14), and a witness's deposition testimony to that same effect, (Dep. of Michele Monter at 31:5-23, attached to Pl.'s Mot. as Ex. N, Dkt. No. 27-16).  Defendants' Rule 56.1 Statement reports: "On February 14, 2025, at Myers' request, the Police Department transferred to Stanley Rachelle, a federally licensed firearms dealer, all of Myers' remaining seized property except the three assault rifles and high-capacity magazines. The Police Department no longer retains any other items seized from Myers."  (Defs.' 56.1 Stmt. ¶ 12).  Defendants failed to file on the Court's docket the evidence they cite in support of that statement, which is described as a Declaration of Gerard Heinz, (*id.*), but in his response to Defendants' Rule 56.1 Statement, Myers admitted that statement in full, without qualification, (Pl.'s 56.1 Resp. ¶ 12).

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Malarczyk v. Lovgren*, No. 22-0504, 2023 WL 8073099, at *1 (2d Cir. Nov. 21, 2023) (quotation omitted).  In light of Myers's ultimate admission that SCPD only retains the three assault rifles and high-capacity magazines — while represented by counsel, and after Defendants pointed out to Myers, by way of their Rule 56.1 response, that his statement claiming to the contrary in his Rule 56.1 Statement was deficient — the Court accepts that fact as true for the purpose of these matters.  *See id.*

PROCEDURAL HISTORY

Myers filed this case on November 8, 2023, bringing three claims pursuant to 42 U.S.C. § 1983—a Fourteenth Amendment procedural due process violation, (Compl. ¶¶ 35–42), a violation of the Second and Fourth Amendments, (*id.* ¶¶ 43–47), and a claim for *Monell* liability, (*id.* ¶¶ 48–53)—as well as two state law claims for conversion, (*id.* ¶¶ 54–57), and replevin, (*id.* ¶¶ 58–63).  Myers's Fourth Amendment claim was dismissed as time-barred and his Second Amendment claim was deemed abandoned, but his due process and *Monell* claims were permitted to proceed.  (Mem. & Order dated June 28, 2024, Dkt. No. 15 at 3–4).  With Myers's consent, both of his state law claims were dismissed.  (*Id.* at 4).

The parties then filed cross-motions for summary judgment on Myers's remaining due process claim and *Monell* claim, brought against all Defendants.[4]

DISCUSSION

"To state a claim under § 1983 for a violation of procedural due process, a plaintiff must: (1) identify a liberty or property interest, (2) show that the state has deprived the plaintiff of that interest, and (3) show that the deprivation was affected without due process."  *Wheatley v. N.Y. State United Tchrs.*, 80 F.4th 386, 392 (2d Cir. 2023); *see also Xu v. City of New York*, No. 21-1059, 2023 WL 4285031, at *2 (2d Cir. June 30, 2023).  Accordingly, the Court first considers whether Myers has a property interest in the firearms held by the SCPD.  *See Cassidy v. Rodriguez*, No. 21-2657, 2023 WL

_____

[4] The case was transferred from the Honorable Frederic Block to the undersigned on January 10, 2025.

9

408944, at *1 (2d Cir. Jan. 26, 2023) ("A threshold question[ ] in any § 1983 claim for denial of procedural due process [is] whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes." (quotation omitted)); *Xu*, 2023 WL 4285031, at *2 ("Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (quotation omitted)).

"It is well settled that upon the termination of criminal proceedings, seized property, *other than contraband*, should be returned to the rightful owner." *United States v. David*, 131 F.3d 55, 59 (2d Cir. 1997) (quotation omitted and emphasis added).[5] As evident from that settled principle, there is no property interest in contraband. *See Vitrano v. United States*, No. 06-CV-6518, 2009 WL 1011582, at *5 (S.D.N.Y. Apr. 14, 2009) ("[S]ociety recognizes no legitimate property interest in contraband.  The courts have recognized two type[s] of contraband. . . . [T]he government has the right to retain the contraband property." (quotations omitted)); *see also Oquendo v. City of New York*, 492 F. Supp. 3d 20, 29 (E.D.N.Y. 2020) ("It is blackletter law that an individual does not have a possessory interest in contraband.").

Myers does not directly contest the seizure of the firearms as unlawful; he primarily argues that "[a] person whose property has been *lawfully* seized" can nonetheless recover the property, if he suffers harm from the government's possession.

---

[5] Myers's reference and citation to Federal Rule of Criminal Procedure 41(g) in his brief, (Pl.'s Opp'n & Reply at 5), is inapposite here given that the seizure was conducted by state, not federal, authorities.

(Pl.'s Opp'n & Reply at 5 (emphasis added)).[6]  Myers also claims that even though he cannot "possess" the property at issue, he still has "ownership" rights—that is, he still "legally owns" the firearms, and is entitled to have them returned to a third party.  (*Id.* at 4).  But he cites no authority to support either novel assertion.  Although Myers cites *United States v. David* for the unremarkable proposition that seized property should generally be returned after the termination of criminal proceedings, (*id.* at 5–6), he never disputes that his guns and high-capacity magazines are contraband, and that concession renders any due process claim meritless.[7]

There is no factual dispute that Myers's pistol license was suspended when the property at issue was seized.  That suspension meant not only that Myers had to surrender all handguns, which he did, but also that he was required to surrender any

---

[6] At one point, Myers suggests that the initial seizure of his firearms—except for the assault rifles and high-capacity magazines, which were related to his arrest—was illegal, but acknowledges such an allegation is not in his Complaint.  (Pl.'s Opp'n & Reply at 3 ("However, he chose to not plead anything about the seizure in the Complaint.")).

[7] Before he filed his opposition to the cross-motion and reply, Myers cited just one case in his summary judgment motion—a Western District of New York case erroneously presented as a Second Circuit case, and in any event, irrelevant to the issues here.  (*See* Pl.'s Mot. at 7–8 (citing *Fisher v. Bureau of Alcohol, Tobacco & Firearms*, No. 22-CV-6440, 2023 WL 2082552 (W.D.N.Y. Feb. 17, 2023))).

rifles.[8] *See Juzumas v. Nassau County*, 33 F.4th 681, 687 (2d Cir. 2022) (per curiam) ("[W]hen an individual's pistol license is suspended or revoked for any reason set forth in Penal Law § 400.00(11)(a) or (b), the licensee must surrender his long guns.");[9] N.Y. Penal Law § 400.00(11)(c) (McKinney 2025) ("In the event such license, firearm, shotgun, or rifle is not surrendered, such items shall be removed and declared a nuisance and any police officer or peace officer acting pursuant to his or her special duties is authorized to remove any and all such weapons."). And he was not at any time permitted to possess assault weapons or high-capacity magazines. (*See* Defs.' Opp'n & Cross-Mot. at 11 ("New York's omnibus 2013 Secure Ammunition and Firearms Enforcement Act, commonly known as the "SAFE Act," criminalizes the possession of assault weapons by civilians as a class D felony. . . . The same goes for the high-capacity magazines seized from Myers." (citing N.Y. Penal Law §§ 265.02(7)-(8))).

Myers was barred from possessing the confiscated firearms and high-capacity magazines; and does not dispute that any rifles or those magazines are contraband. He therefore has no due process claim based on their retention. *Mallard v. Potenza*, 376 F.

---

[8] Defendants contend that Myers's long guns "were not seized as part of a federal criminal prosecution or otherwise," but "[r]ather, Myers transferred them to the Suffolk County Police Department . . . after being informed [] that he was required to surrender those items pursuant to N.Y. Penal Law 400.[00](11)(c)." (Defs.' Mem. in Reply dated June 23, 2025, Dkt. No. 27-21 at 3). But whether they were surrendered or seized (as Myers contends) is not material, since Penal Law § 400.00(11) defined them as contraband, which extinguished his liberty interest in them (and he does not challenge the legality of the statute).

[9] Because Myers advances no argument contesting the constitutionality or applicability of Section 400.00(11), the constitutional arguments presented in *Juzumas* are not before the Court here. *See* 33 F.4th at 689–92.

App'x 132, 134 (2d Cir. 2010) ("We further affirm the judgment with respect to Mallard's due process claim based on the retention of his firearms, because Mallard had no legitimate possessory interest in firearms for which he held no license."); *Hudson v. Town of Pine Plains-Just. Christie Acker*, No. 12-CV-5548, 2012 WL 13208570, at *2 (S.D.N.Y. Sep. 12, 2012) ("In New York, an individual has a 'legitimate possessory interest in firearms' only if he has the appropriate license or permit." (quotation omitted)).

Where there is no protected property or liberty interest that was impaired, a Fourteenth Amendment procedural due process claim fails. *See Wheatley*, 80 F.4th at 393 ("Where, as here, no protected liberty interest is being impaired, no due process is required." (quotation omitted)).  Myers, therefore, cannot prevail on his Section 1983 claims based on the retention of his firearms or high-capacity magazines.[10]

*        *        *

There remains one claim, however, on slightly different footing.  Myers has consistently alleged that police seized—beyond the guns and high-capacity magazines—a large quantity of ammunition.  (Compl. ¶ 12).  And although, by virtue of not disputing the fact in his Rule 56.1 Statement opposition, Myers concedes that

---

[10] The remaining points raised by the parties are either irrelevant or unnecessary to address in light of this disposition.  For example, Myers consistently points out that Defendants agreed to transfer some of Myers's other long guns to Rachelle, but not the entire set of weapons.  But there is no claim tethered to the supposed illegality of that distinction, for example, a claim challenging arbitrary or capricious action.  And whether Myers's conviction currently renders him ineligible to possess firearms under state or federal law has no bearing on whether the rifles were contraband at the time of their seizure.

13

Defendants returned this ammunition to him, *supra* pp. 7–8, he has alleged a claim that Defendants' ongoing retention of that ammunition, from the date of the seizure to the date it was returned, was illegal.  Defendants' own documents concede that they seized this ammunition, (Police Dep't Incident Data, attached to Defs.' 56.1 Stmt. as Ex. A, Dkt. No. 30 at 1), and they do nothing to address the claim based on the delay in return. (Notably, these are not contraband, because they are neither prohibited weapons nor high-capacity magazines under any law cited by Defendants.[11])  While the date of their return is not clear from the record, whatever that date is, there is some period of allegedly illegal retention.

Myers seeks damages for the delayed return.  Though such a claim is alleged, Myers has not asserted it against any viable defendant.

Although Myers named the SCPD and the Suffolk County District Attorney's Office as Defendants, they are arms of Suffolk County that lack capacity to be sued, since they lack a legal identity apart from the municipality itself.  *See Henry v. County of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021); *Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) (holding that SCPD cannot be sued); *Ayers v. Suffolk Cnty. Dist. Att'y Off.*, No. 20-CV-1192, 2022 WL 4539580, at *3 (E.D.N.Y. Sep. 28, 2022) (holding that the District Attorney's Office cannot be sued).  Nor can Myers proceed against Assistant

---

[11] The notice revoking Myers's pistol license cites to 18 U.S.C. § 922(g) — the federal felon in possession statute.  (Revocation Notice).  This notice was issued on October 26, 2020, (*id.*), well after the ammunition was seized.  There is nothing in this record to suggest that Defendants seized the ammunition as contraband under federal law — and indeed, it is doubtful they could have, because there is also no indication Myers was a felon, or Defendants believed him to be one, at that time.

District Attorney Skiber in her personal or official capacity, having conceded she is entitled to immunity, by not addressing those arguments in his papers. (Defs.' Opp'n & Cross-Mot. at 14–16); *e.g.*, *D'Alessandro v. City of New York*, 713 F. App'x 1, 5–8, 10 (2d Cir. 2017).

As for Suffolk County, Myers could only obtain damages if he had a viable *Monell* claim. But he does not. Myers alleged the existence of a "policy and practice" or of a failure to train by Suffolk County in conclusory fashion in his Complaint, (Compl. ¶¶ 27, 29), and failed to respond to Defendants' argument that he did not show any County policy or custom, (Defs.' Opp'n & Cross-Mot. at 17). And there is no evidence in the record of any policy or custom. He, therefore, may not proceed on his *Monell* claim against Suffolk County. *E.g.*, *O'Leary v. City of New York*, No. 24-2710, 2025 WL 1554327, at *1 (2d Cir. June 2, 2025) (affirming dismissal for failure to demonstrate a municipal custom or policy); *Arnold v. Town of Camillus*, No. 24-2556, 2025 WL 2699162, at *3 (2d Cir. Sep. 23, 2025) (same); *A.P. v. Dannhauser*, No. 25-1030, 2025 WL 3120444, at *2 (2d Cir. Nov. 7, 2025) ("[A]n allegation of failure to train, without more, does not pass muster[.]").

That leaves the unnamed John Doe SCPD officers as the only remaining Defendants in this case. But Myers, who has been represented by counsel throughout these proceedings, never moved to amend the Complaint to substitute any particular officers. Nor is there anything suggesting that Myers took any discovery to determine which officers could be substituted into the case. And it would be inappropriate for him to do so now, since the case has already progressed to summary judgment. *See,*

15

*e.g.*, *Islam v. Tirelli*, No. 24-2981, 2025 WL 3264831, at *3 (2d Cir. Nov. 24, 2025) ("Here, the district court correctly explained that Islam—who was represented by counsel throughout the district court proceedings—never filed a proper motion to amend the complaint and to substitute Officer Morrish as a defendant.  For this reason, and because discovery had already closed and the case had progressed to the summary judgment phase, the district court did not abuse its discretion when it denied Islam's belated and improper requests to substitute a party.").

CONCLUSION

For the reasons explained above, Myers's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.  Myers's Section 1983 due process claim and his associated *Monell* claim are dismissed.  The Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  March 2, 2026
       Central Islip, New York